UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES R. WILLIAMS II,

                       Petitioner,

      -against-                                                       9:20-CV-0660 (LEK)

ESTEBAN M. GONZALEZ,

                       Respondent.
_____

## DECISION AND ORDER

**I.    INTRODUCTION**

Petitioner Charles Williams seeks federal habeas relief pursuant to 28 U.S.C. § 2241. Dkt. No. 1 ("Petition"). On July 17, 2020, the Court ordered respondent to file a limited answer discussing whether administrative and state law remedies were still available to Petitioner during the coronavirus pandemic or if the exhaustion requirement should be waived. Dkt. No. 2 ("July Order"). Respondent filed an answer, along with two additional affidavits and supporting documents, in response. Dkt. Nos. 8–10. Petitioner did not file a reply. For the reasons discussed below, the Petition is dismissed as premature and unexhausted.

**II.    PETITION**

At the time Petitioner filed his habeas Petition, Petitioner was a pretrial detainee in the custody of New York State authorities at the Onondaga County Justice Center, awaiting trial. Pet. at 1.[1, 2] Petitioner argues that he is entitled to habeas relief because (1) on March 10, 2020, his

---

[1] "[S]ince 25 June 2020[, Petitioner has been] detained by [the] sheriff, at the Onondaga County Correctional Facility[.]" Dkt. No. 8 at 2.

[2] For the sake of clarity, citations to Petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

bail was increased to an amount impossible for Petitioner to pay in violation of his Eighth Amendment rights and the New York State Bail Reform Act; (2) on March 13, 2020, the visitation program for family and friends was terminated due to the coronavirus pandemic, despite the fact that secure visitation with inmates' counsel continued, in contravention of Petitioner's constitutional rights; (3) Petitioner has been wrongly confined in the Special Housing Unit ("SHU") in Involuntary Protective Custody ("IPC") as a result of the pandemic for the past several months in violation of facility protocols; and (4) Petitioner's constitutional right to a speedy trial has been violated as he has received no court date for either motion practice or his trial, thus, his continued custody renders him an illegal captive. Id. at 6–7, 9–11.

Upon initial review, the Court determined that Petitioner's claims regarding (1) alleged violations of the bail reform law and (2) reinstatement of his visitation rights with his family were noncognizable. July Order at 4–5. Accordingly, Respondent was not directed to address these claims as they were not entitled to habeas relief. Id. at 5.

### III. DISCUSSION

"Section 2241 is subject to a judge-made exhaustion requirement." Steward v. Wolcott, No. 20-CV-6282, 2020 WL 2846949, at *1 (W.D.N.Y. June 2, 2020) (citing inter alia McPherson v. Lamont, -- F. Supp.3d --, No. 20-CV-0534, 2020 WL 2198279, at *4 n.2 (D. Conn. May 6, 2020); see also United States ex rel. Scranton v. New York, 532 F.2d 292, 294 (2d Cir. 1976) (explaining that while exhaustion is not a statutory prerequisite, "decisional law has superimposed such a requirement in order to accommodate principles of federalism."). "The exhaustion requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]'" Jimenez v.

Walker, 458 F.3d 130, 148-49 (2d Cir. 2006) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)). To properly exhaust his claims, Petitioner must do so both procedurally and substantively. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). In other words, Petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id.

In this case, Petitioner has not successfully exhausted his state court remedies. Petitioner indicated that he presented his claims to the Onondaga County Court; however, information concerning the type of motion, the date it was filed, the substance therein, and the date which it was decided were not included in the present petition. Pet. at 2. Further, these representations are contrary to the record before the Court. Both (1) the Chief Clerk from the Onondaga County and Onondaga Supreme Courts and (2) the County Clerk of Onondaga County and Clerk of the Court of the Supreme and Onondaga County Courts provided affidavits to the Court indicating that the only state court actions filed involving Petitioner were criminal actions concerning his alleged criminal conduct. Dkt. No. 9 at 4; Dkt. No. 10 at 2–3. There is nothing in the record to indicate that, during the course of the criminal proceedings, Petitioner presented his current claims before the state court for their consideration.³ Accordingly, based on the present state of the record, Petitioner's claims are clearly unexhausted.

---

³ It is important to note that during the period from February 10, 2020, through August 26, 2020, Petitioner and his attorney appeared before the criminal court, either in person or virtually, seven times. Dkt. No. 10 at 2. Further, two of those seven appearances concerned Petitioner's bail. Id. Moreover, on September 4, 2020, Petitioner was supposed to appear before the criminal court; however, the proceeding was adjourned because Petitioner refused to leave his cell. Id. at 3. This would indicate that Petitioner and his counsel had the ability to communicate with the court about his concerns related to his health, the coronavirus pandemic, and release on bail on at least two occassions.

However, the exhaustion requirement can be waived when there is a basis on the record to conclude that there is an absence of available state corrective process (*e.g.*, where there is no further state proceeding for a petitioner to pursue) or circumstances exist that render that state court process ineffective to protect a petitioner's rights (*e.g.* where further pursuit would be futile). 28 U.S.C. § 2254(b)(1)(B)(i), (ii); Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000). The Court previously noted that "petitioner's vague and conclusory allegations demonstrating exhaustion would appear to preclude all of petitioner's claims seeking immediate release from moving forward." July Order at 3 (citing cases). However, the Court also noted that "recent decisions in this Circuit have noted that Section 2241's exhaustion requirement may be easier to avoid in light of the current pandemic, . . . considering the diminished capacity in which that state court system was operating and the consequence of potentially catastrophic health outcomes[.]" Id. at 4 (internal quotation marks and citations omitted).[4] Because it was unclear whether waiver of the exhaustion requirement was appropriate, a limited answer was directed.

As the coronavirus pandemic unfolded, more courts were forced to examine the availability of administrative and state court remedies. A later challenge, in this District, by a petitioner held in state court custody pursuant to a state court conviction discussed the available state court remedies for an inmate challenging their confinement during the coronavirus

---

[4] The affidavit from the County Clerk of the Onondaga County Court and Clerk of the Court for Onondaga Supreme Court explained that several executive orders were instituted directing what types of proceedings could continue–namely "essential matters"–during the height of the coronavirus pandemic in the Spring and Summer of 2020. See Dkt. No. 9 at 2–3, 6–27. While "[h]abeas corpus was not, by name, on the list of essential matters, . . . bail applications, reviews, writs, and any other matter the court deems essential were[.]" Id. at 3. Accordingly, and as further discussed infra, similar challenges were lodged in state court in Onondaga County and across all of New York State during this time period.

pandemic. See Simpson v. New York State Dep't of Corr., No. 20-CV-1363, 2020 WL 6799370 (N.D.N.Y. Nov. 19, 2020).

> Specifically, both Slater and Elleby outline that petitioners should pursue a "CPLR Article 70 [petition whereby] state prisoners may petition for a writ of habeas corpus in state court to inquire in the cause of his or her detention and for deliverance." Slater v. Keyser, No. 1:20-CV-3012, 2020 WL 4016759, at *4 (S.D.N.Y. July 16, 2020) (internal quotation marks and citations omitted); accord Elleby v. Smith, No. 1:20-CV-2935, 2020 WL 2611921, at *4 (S.D.N.Y. May 22, 2020) (explaining that it was "recently noted that an inmate concerned about COVID-19 is free to bring a petition for a writ of habeas corpus in the New York State Supreme Court, pursuant to Article 70 of New York's Civil Practice Law and Rules, on the ground that the conditions of his/her confinement are unlawful and that many have been granted by the justices of the New York State Supreme Court.") (internal quotation marks and citations omitted).

Id., at *3.

Here, regardless of Petitioner's status as a pretrial detainee, the state courts were still open to him and there was a primary avenue, an Article 70 habeas petition, for challenging Petitioner's alleged constitutional violations. This is demonstrated by the affidavit submitted by the County Clerk of the Onondaga County Court and Clerk of the Court for Onondaga Supreme Court, who indicated "that, from 18 March 2020[,] . . . to 8 June 2020[,] . . . five judicial proceedings for habeas relief were commenced in Supreme Court, Onondaga County." Dkt. No. 9 at 5.[5]

The availability of state courts to make these determinations was also illustrated by the published state court decisions that were entered during the time period of March to June 2020,

---

[5] For comparison purposes, these numbers are consistent with the corresponding period from the year before. Dkt. No. 9 at 5 (explaining that during that same time prior in 2019, "four judicial proceedings for habeas relief were commenced in Supreme Court, Onondaga County.").

addressing identical issues for petitioners both incarcerated and on pretrial detention alike. See e.g., People ex rel. Carroll v. Keyser, 184 A.D.3d 189 (3rd Dep't 2020) (decision dated June 4, 2020, reversing the decision of the Sullivan County Court ordering the immediate release of an inmate due to COVID); People ex. rel. Gregor v. Reynolds, 124 N.Y.S.3d 118 (Sup. Ct., Essex Cty. 2020) (decision dated April 17, 2020, from Essex County, deciding Article 70 petitions filed by individuals detained pending parole violation hearings, challenging due process violations and seeking release due to COVID); People ex rel Stoughton v. Brann, 122 N.Y.S.3d 866 (Sup. Ct., N.Y. Cty. 2020) (decision dated June 4, 2020, ordering release of eighteen "at risk" petitioners–some detained pending hearings on alleged parole violations–who were detained at Riker's Island); see also Slater, 2020 WL 4016759, at *5 (citing cases) ("[C]ourts across New York State have considered and resolved petitions seeking release from state custody in connection with the COVID-19 pandemic.").

In sum, "exhaustion requirements can (and should) be waived when relief is truly unavailable. But waiving them here–when state courts clearly were available [just in a different capacity] . . .–would turn the habeas system upside down." Money v. Pritzker, 453 F. Supp. 3d 1103, 1136 (N.D. Ill. 2020). Therefore, the exhaustion requirement is not waived on the grounds of unavailability, and Petitioner's failure to engage in such is presently fatal to his petition.

Moreover, as noted in Elleby,

> The rule that "when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief" serves useful purposes. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). Recourse first to state remedies enables a factual record to be developed. It also may afford relief to the petitioner, obviating the need for a federal-court action or federal

> intervention. . . . There is value to giving the New York state courts a first opportunity to evaluate such a claim, and develop a full factual record, particularly given the rapidly changing conditions in prisons and the evolving steps that prisons are taking to meet the unprecedented challenges presented by the pandemic, in general and as specifically affecting [petitioner's] conditions of confinement.

Elleby, 2020 WL 2611921, at *5. Therefore, it is not futile to require Petitioner to complete exhaustion of his state court remedies before pursuing a federal habeas petition.

Based on the foregoing, the petition is premature and is dismissed without prejudice to re-filing a complete petition once Petitioner has pursued and exhausted any claims available to him in the state courts. See Diguglielmo v. Senkowski, 42 F. App'x. 492, 496 (2d Cir. 2002) (summary order) ("[B]ecause the New York Court of Appeals has not yet had an opportunity to address DiGuglielmo's federal claims, comity requires that we allow that court an opportunity to do so. Accordingly, we dismiss DiGuglielmo's petition without prejudice. This will allow DiGuglielmo to pursue any procedural options available to him in New York state court, and then take whatever steps may be appropriate to return to federal court if necessary.") (footnote omitted).[6]

## IV.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the petition (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust available state court remedies; and it is further

---

[6] The Court notes that if Petitioner's claims are unsuccessful in state court, a subsequent habeas petition should not run afoul of the "second or successive petition" limitations because this petition is being dismissed for failure to exhaust and not on the merits. Burton v. Stewart, 549 U.S. 147, 155 (2007) (per curiam) (citing Slack v. McDaniel, 529 U.S. 473, 478 (2000)).

**ORDERED,** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires; and it is further

**ORDERED**, that the Clerk is directed to serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   September 24, 2021
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge